IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CRIMINAL NO.: 1:18-CR-661 |
| | ) | |
| Plaintiff, | ) | JUDGE BENITA Y. PEARSON |
| | ) | |
| -vs- | ) | |
| | ) | |
| SEAN P. MCELHATTEN, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## POSITION OF THE DEFENDANT AS TO SENTENCING FACTORS AND MOTION FOR DOWNWARD DEPARTURE AND/OR VARIANCE

On July 30, 2019 the Defendant, Sean McElhatten, will come before this Honorable Court for sentencing in connection with a guilty plea to the following offense: one (1) count of Receipt and Distribution of Visual Depictions of Real Minors Engaged in Sexually Explicit Conduct in violation of 18 U.S.C. § 2252(a)(2) and one (1) count of Possession of Child Pornography in violation of 18 U.S.C. § 2252A(a)(5)(B).  The purpose of the instant Memorandum is to bring light to additional information pertaining to Mr. McElhatten and his offense, as well as to elaborate on the various factors that will guide this Honorable Court's determination as to a fair and reasonable sentence in this case.

Furthermore, Mr. McElhatten maintains specific objections to certain aspects of the Guideline's calculation set forth in the Presentence Report (hereinafter "PSR"), including the following, *to wit*: the evidence warrants a two-level reduction under U.S.S.G. §2G2.2(b)(1); application of U.S.S.G. §2G2.2(b)(6) constitutes impermissible double counting; and the evidence fails to support application of a five-level enhancement for a pattern of conduct under U.S.S.G.

§2G2.2(b)(5). Should the Court agree with these assertions, a downward variance would be warranted.

Additionally, as discussed more fully *infra*, Mr. McElhatten asserts that the calculated Guideline's range set forth in the PSR exceeds the maximum permissible term provided by statute. Thus, even if the Court were to reject the foregoing objections, counsel contends that the appropriate recommended Guideline's range should be 240 months.

Finally, Mr. McElhatten respectfully submits that several of the factors set forth in 18 U.S.C. § 3553(a) provide sufficient grounds to warrant a downward variance from the Guideline's range in this matter. Those factors will be addressed in the instant Memorandum as well as at the sentencing hearing in this case.

I.      **FACTUAL HISTORY**

The investigation of Mr. McElhatten began in March of 2017 when a law enforcement officer was alerted to a particular Internet Protocol ("IP") address that appeared to have child pornography files and/or images available for public download. PSR ¶8. While connected to the BitTorrent network, officers proceeded to download approximately 120 files of suspected child pornography from the above-referenced user. PSR ¶9. Investigators subsequently issued an administrative Subpoena to Time Warner Cable and determined that the IP address was assigned to Mr. McElhatten's residence. PSR ¶14.

On July 12, 2017, law enforcement officers executed a search warrant at Mr. McElhatten's residence. PSR ¶15. Officers located and seized several computers and electronic devices from the residence. *Id*. Officers then contacted Mr. McElhatten to apprise him of the situation. PSR ¶16. Mr. McElhatten immediately returned to the residence and voluntarily submitted to questioning concerning law enforcement's investigation.

Mr. McElhatten was polite, cooperative and forthright with officers during the course of questioning. Although maintaining that he did not knowingly or intentionally distribute any child pornography, he candidly admitted to downloading and viewing such materials. PSR ¶17-19. He also informed the officers as to the location of various items that were of evidentiary interest to the investigation, including retrieving certain items from his vehicle and providing the same to law enforcement. PSR ¶22. The interview concluded without issue and his electronic devices were seized for further forensic examination.

The following day, Mr. McElhatten voluntarily went to the local Sheriff's Office and submitted to further questioning regarding their investigation. In line with his previous cooperation, Mr. McElhatten answered all of the officers' questions truthfully and without hesitation. At the end of the interview, Mr. McElhatten was permitted to leave the Sheriff's Office and return to his residence pending further investigation.

Mr. McElhatten was ultimately indicted with the following offenses, to wit: one (1) count of Receipt and Distribution of Visual Depictions of Minors Engaged in Sexually Explicit Conduct in violation of 18 U.S.C. § 2252(a)(2) and (b)(1) (hereinafter "Receipt"); and one (1) count of Possessing Child Pornography in violation of 18 U.S.C. § 2252A(a)(5)(B) (hereinafter "Possession"). On April 11, 2019, Mr. McElhatten appeared in Court and entered a plea of guilty to both counts of the Indictment. He stands before this Honorable Court for the imposition of sentence at this time.

## II. AT THE TIME OF SENTENCING, IT WILL BE THIS HONORABLE COURT'S DUTY TO IMPOSE A SENTENCE SUFFICIENT, BUT NOT GREATER THAN NECESSARY, TO COMPLY WITH THE PURPOSES OF FEDERAL SENTENCING SET FORTH IN 18 U.S.C. §3553(a).

In light of *United States v. Booker,* 543 U.S. 220 (2005), this Honorable Court is required to engage in a multi-step analytical process at sentencing. First, the Court must determine, after making appropriate findings of fact, the applicable Guidelines range. *United States v. Grossman*, 513 F.3d 592, 595 (6th Cir. 2008). After making appropriate findings of fact, the Court must determine whether a sentence within that range serves the factors set forth in § 3553(a). *Id.* Finally, the Court must articulate the reasons for the sentence imposed in light of the factors set forth in § 3553(a). *Id.*

### A. Calculating the Appropriate Guidelines Range

As an initial matter, it is important to note that Mr. McElhatten unequivocally accepts full responsibility for these offenses. His life has been forever changed as a result of his choices and the repercussions for his conduct. As a thirty-one (31) year-old with no prior criminal history who now faces the possibility of a substantial term of incarceration, Mr. McElhatten appreciates the severity of this situation and he is dedicated to separating himself entirely from the behavior that gave rise to the instant matter. He is remorseful and contrite and desires only a chance to return to society and live as a productive, law-abiding citizen.

Mr. McElhatten recognizes that his offense is serious and requires the appropriate attention of this Court. While acknowledging that his conduct was illegal and unacceptable, there remain pertinent legal objections to the conclusions and advisory Guideline's range set forth in the PSR that warrant consideration and resolution by this Court. The United States Supreme Court has made clear that there is a due process right to be sentenced on the basis of accurate information. *United States v. Tucker*, 404 US 443 (1972). In fact, the "sole interest of the

defendant in sentencing is the right not to be sentenced on the basis of inaccurate or unreliable information." *United States v. Lopez*, 898 F2d 1505, 1512 (11th Cir. 1990).

Part of this fair sentencing procedure has been codified in Rule 32(i)(3) of the Federal Rules of Criminal Procedure, which provides that at sentencing the court:

> (B) must – for any disputed portion of the presentence report or other controverted matter – rule on the dispute, or determine that a ruling is unnecessary either because the matter will not affect sentencing, or because the court will not consider the matter at sentencing; and (C) must append a copy of the court's determination under this rule to any copy of the presentence report made available to the Bureau of Prisons.

Once specific objections to the PSR are made, findings are required, and failure to do so will result in a remand for re-sentencing. *United States v. Terry*, 916 F.2d 157, 162 (4th Cir. 1990). A sentencing court's obligation to make findings of fact does not simply reach issues which would have an effect on the sentencing Guidelines; rather, the PSR has importance beyond sentencing. Therefore, resolution of all issues is imperative. *United States v. Blanco*, 884 F.2d 1577, 1580 (3d Cir. 1989).

### 1. Calculated Guideline's range

In the matter *sub judice*, the PSR determined that the total offense level is thirty-nine (39). PSR ¶48. With a criminal history category of one (1), the recommended Guideline's range set forth in the PSR is 262-327 months. PSR ¶76. Assuming, without conceding, that the Court adopts the PSR's sentencing calculation, the undersigned nevertheless submits that the pertinent recommended Guideline's range should be 240 months.

As the Court is aware, the maximum sentence permitted by statute is 20 years. *See* 18 U.S.C. § 2252(a)(2) and § 2252A(a)(5)(B). Likewise, the mere fact that Mr. McElhatten has been convicted of both receiving and possessing child pornography does not *ipso facto* permit a sentence above the 20-year statutory maximum. As recognized by the United States Supreme

Court, the Double Jeopardy Clause "protects against multiple punishments for the same offense." *North Carolina v. Pearce*, 395 U.S. 711, 717 (1969). Two statutes proscribe different offenses only if each offense requires proof of an element that the other does not. *See Blockburger v. United States*, 284 U.S. 299, 304 (1932). The Sixth Circuit has previously held that convictions for both knowingly possessing child pornography and knowingly receiving the same child pornography constituted multiple punishments for the same conduct. *See, e.g., United States v. Ehle*, 640 F.3d 689, 294-695 (6th Cir. 2011).

Applying the same rationale to the case at bar, the undersigned submits that the imposition of separate sentences for the underlying convictions would violate Mr. McElhatten's rights under the Double Jeopardy Clause of the United States Constitution. As such, even assuming that the Court adopts the Guideline's calculation set forth in the PSR, counsel avers that the appropriate recommended Guideline's range should be 240 months – the maximum term of incarceration permitted by statute. *See* 18 U.S.C. §§ 2252(a)(2) and 2252A(a)(5)(B).

**2. Specific Offense Characteristics**

The PSR contains several enhancements that the Probation Officer has determined to be applicable in the case at bar. For the reasons that follow, and additional information and arguments to be presented at the sentencing hearing in this matter, Mr. McElhatten respectfully submits that these enhancements should not apply in this case.

**a. U.S.S.G. §2G2.2(b)(1) – base offense level**

The final PSR notes that the base offense level applicable in this case is 22. PSR ¶34. However, U.S.S.G. §2G2.2(b)(1) expressly provides that a two (2) level reduction is appropriate where the defendant's conduct is limited to the receipt or solicitation of material involving the sexual exploitation of a minor and the defendant did not intend to traffic in, or distribute, such

material.

As previously noted, Mr. McElhatten denied any intentional distribution of child pornography throughout the course of his interview with law enforcement officers. Because there is nothing to establish that he intended to traffic in or distribute the materials in question, the undersigned maintains that a 2 level reduction under U.S.S.G. §2G2.2(b)(1) is appropriate in this case.

### b. U.S.S.G. 2G2.2(b)(5) – pattern of activity[1]

Mr. McElhatten objects to the application of a five-level enhancement for engaging in a pattern of activity involving the sexual abuse or exploitation of a minor. PSR ¶38. The enhancement is predicated upon Mr. McElhatten surreptitiously photographing and/or recording two (2) underage girls while on vacation in or around 2015. *Id*. The PSR notes that the photographs/recordings were taken while the minors were in the bathroom and bedroom. *Id*. The PSR further explains that one of the photographs/recordings depicted a minor's buttocks and another captured a partially-exposed vagina. *Id*.

The undersigned contends that the conduct alleged in the PSR does not constitute a pattern of activity involving the sexual abuse or exploitation of a minor. As such, Mr. McElhatten

---

[1] The applicability of the instant enhancement will largely depend on the specific content depicted in the photographs/recordings referenced in the PSR. Because the enhancement was not contained in the first disclosure of the PSR, counsel was unaware that reviewing these photographs/recordings would be necessary for purposes of sentencing. After receiving the final PSR, the undersigned contacted Assistant United States Attorney (hereinafter "AUSA") Michael Sullivan to discuss the matter further. AUSA Sullivan stated that he would contact the assigned case agent to inquire about making arrangements to review the relevant items prior to the sentencing hearing. Counsel can then make a determination as to whether any supplemental arguments are required or, in the alternative, whether to withdraw the instant objection. Accordingly, the undersigned expressly reserves the right to supplement (or potentially withdraw) its objection to U.S.S.G. §2G2.2(b)(5) pending its review of the photographs/recordings in question.

respectfully requests that the Court sustain the instant objection and refuse to include U.S.S.G. §2G2.2(b)(5) when calculating the applicable Guideline's range.

### c. U.S.S.G. §2G2.2(b)(6) – use of a computer

Mr. McElhatten further submits that the two-level enhancement for "use of a computer" pursuant to U.S.S.G. §2G2.2(b)(6) is also without merit. *See* PSR ¶39. To that end, the undersigned notes that the instant matter is distinguishable from *United States v. Lewis*, 605 F.3d 395 (6th Cir. 2010), wherein the Sixth Circuit denied a similar challenge to U.S.S.G. §2G2.2(b)(6) after concluding that the defendant did not need to use a computer in order to violate the criminal statute in question.

Here, however, the Indictment expressly provides that a computer (*i.e.* no other device) was used to facilitate the crime. Thus, the Government specifically alleged that Mr. McElhatten received and distributed child pornography through the use of a computer. As a result, this case is distinguishable from the facts underlying the Sixth Circuit's decision in *Lewis*, *supra*. Because Mr. McElhatten's use of a computer was already accounted for in the Indictment, application of the two-level enhancement under U.S.S.G. §2G2.2(b)(6) would constitute impermissible double counting. Precedent case law from other jurisdictions supports this contention. *See e.g. United States v. Baldwin*, 743 F.3d 357, 362 (2d Cir. 2014)(district court declined to apply two level enhancement for use of a computer after determining that said enhancement was duplicative of all other enhancements).

Furthermore, the United States Department of Justice (hereinafter "DOJ") has issued policy statements that provide further support for the rejection of this enhancement. Specifically, in March of 2013, the DOJ wrote a letter to the United States Sentencing Commission (hereinafter "U.S.S.C.") setting forth various suggested revisions to the child pornography guidelines.

Included amongst those revisions was the DOJ's suggestion that the two-level enhancement for using a computer under U.S.S.G. §2G2.2(b)(6) be eliminated in its entirety. As the DOJ explained, "[b]ecause the vast majority of child pornography offenses now involve the use of a computer, this specific offense characteristic should be eliminated and replaced by others…which better distinguish between different classes of offenders." *See DOJ Letter* dated March 5, 2013, *available at*: http://sentencing.typepad.com/files/doj-letter-to-ussc-on-cp-report.pdf.

Based upon the foregoing arguments, Mr. McElhatten respectfully submits that application of U.S.S.G. §2G2.2(b)(6) is unwarranted and constitutes impermissible double-counting.

### d. General objection to U.S.S.G. §2G2.2

Mr. McElhatten submits a general objection to the Court's use of and reliance upon the enhancements set forth in U.S.S.G. §2G2.2, *et seq*. As explained more fully *infra*, courts throughout the United States, including several courts within this District, have noted their rejection and criticism of these enhancements, including the absence of any basis in empirical study to support their application. *See, e.g., United States v. Marshall*, 870 F. Supp.2d 489 (N.D. Ohio 2012)(J. Zouhary)(varying downward to 60 month statutory minimum based, *inter alia*, on disagreements with § 2G2.2); *United States v. McNerney,* 636 F.3d 772, 775–76 (6th Cir. 2011)(noting that U.S.S.G. §2G2.2 is "fundamentally different" from most other Guidelines because, whereas "Sentencing Guidelines are typically developed by the Sentencing Commission using an empirical approach based on data about past sentencing policies…the Commission did not use this empirical approach in formulating the Guidelines for child pornography").

Based upon the foregoing arguments, Mr. McElhatten respectfully requests that the Court grant a downward departure and/or variance in the matter *sub judice*. In the event that the Court

determines that the aforementioned enhancements are applicable in this case, counsel maintains that the information and arguments supporting the instant objections are at the very least sufficient to warrant a downward variance in this case.

### III. AT THE TIME OF SENTENCING, IT WILL BE THIS HONORABLE COURT'S DUTY TO IMPOSE A SENTENCE SUFFICIENT, BUT NOT GREATER THAN NECESSARY, TO COMPLY WITH THE PURPOSES OF FEDERAL SENTENCING SET FORTH IN 18 U.S.C. §3553(a).

In light of *United States v. Booker,* 543 U.S. 220 (2005), this Honorable Court must engage in a multi-step analytical process at sentencing. Post-*Booker* opinions make clear that, although a sentencing court must "give respectful consideration to the Guidelines, *Booker* permits the court to tailor the sentence in light of other statutory concerns as well." *Kimbrough v. United States,* 552 U.S. 85, 101 (2007) (internal quotation marks and citation omitted). Accordingly, although the "Guidelines should be the starting point and the initial benchmark," district courts may impose sentences within statutory limits based on appropriate consideration of all of the factors listed in §3553(a), subject to appellate review for "reasonableness." *Pepper v. United States*, 562 U.S. 490 (2011), *quoting Gall v. United States,* 552 U.S. 38, 49-51 (2007). The Supreme Court has expressly directed that an "individualized assessment" of the case "based on the facts presented" is required. *Gall,* 552 U.S. at 50. Such analysis should be guided by "reasonableness" and an "individualized application of the statutory sentencing factors." *Id.* at 46-47. A sentencing judge retains "wide latitude to decide the proper degree of punishment for an individual offense and a particular crime." *United States v. Cavera,* 550 F.3d 180, 189 (2d Cir. 2008).

**A.** **Examination of the factors set forth in 18 U.S.C. § 3553(a) indicates that a downward variance from the Guidelines is reasonable and appropriate.**

    **1.** **Nature and circumstances of the offense and the history and characteristics of Mr. McElhatten.**

*a. history and characteristics of Mr. McElhatten*

In *Pepper*, *supra*, the United States Supreme Court endorsed the notion that post-*Booker* sentencing must focus as much on the offender, his individual background, and his need for services and rehabilitation as on the offense committed. "[H]ighly relevant—if not essential—to [the] selection of an appropriate sentence is the possession of the fullest information possible concerning the defendant's life and characteristics. Permitting sentencing courts to consider the widest possible breadth of information about a defendant ensures that the punishment will suit not merely the offense but the individual defendant." *Pepper*, 131 S. Ct. at 1240 (internal citations omitted).

Mr. McElhatten is thirty-one (31) years-old and has no prior criminal history apart from this case. PSR ¶50-51. He was born on December 22, 1987 in Mentor, Ohio where he resided with his parents, Linda and Gordon, and his three (3) siblings. PSR ¶58. Mr. McElhatten has lived his whole life with his father in Mentor, Ohio. PSR ¶61. He graduated from Lake Catholic High School in 2006 and began working at Target as a sales floor associate in August 2007. PSR ¶66; 70. He also enrolled in Lakeland Community College to further his education.

Mr. McElhatten always maintained strong relationships with his family members, but was particularly close with his mother. PSR ¶58. In or around 2010, his mother passed away unexpectedly from stage IV back and lung cancer. *Id*. His mother's passing had a traumatic effect on Mr. McElhatten and he began engaging in self-destructive behaviors that ultimately culminated in his commission of the instant offenses. PSR ¶17. As noted in the PSR, Mr.

McElhatten started searching for and viewing pornography materials on the Internet shortly after his mother died. *Id.* Although he was initially focused on obtaining adult pornography, his conduct eventually progressed and he began viewing child pornography materials. *Id.*

Admittedly, Mr. McElhatten did not appreciate the severity of his behavior at the time he committed the offenses herein at issue. Rather, he "disassociated himself from the victims in the video by telling himself that it was 'just a move' and therefore not real." PSR ¶19. As explained more fully *infra*, through treatment Mr. McElhatten has gained a better understanding as to the magnitude of his conduct and its impact, although unintended, upon the individuals depicted in the materials that he viewed.

Prior to her death, Mr. McElhatten's mother served as the primary caretaker for his father, who suffers from numerous health issues that render him unable to live and/or function independently. Mr. McElhatten assumed responsibility for his father's care following his mother's passing. As part of his duties, Mr. McElhatten assists his father in nearly every aspect of his day-to-day life (*e.g.* getting around the house; bathing; meal preparation; general upkeep of the residence; etc.). Likewise, Mr. McElhatten is tasked with ensuring that his father receives appropriate medical care, including scheduling appointments, physical therapy, providing transportation, as well as obtaining and administering prescribed medications.

Because he has served as his father's primary care-taker for nearly ten (10) years, the realization that he will be required to serve a significant term of incarceration has been particularly difficult on both Mr. McElhatten and his father. Mr. McElhatten is extremely nervous about his father's continued health and the impact that the sentencing will have on his overall well-being. He is also devastated by the fact that he may not be able to see his father again before he is released from prison.

In addition to his personal angst, Mr. McElhatten has also experienced significant anxiety stemming from the necessity of having to find a long-term solution for his father's care during his term of imprisonment. In light of his father's medical ailments, limited mobility, and overall inability to care for himself, it appears that his father will need to be admitted into an assisted living facility. Mr. McElhatten has been researching various facilities and making the necessary arrangements to secure his father's admission. He has also been communicating with his siblings and other family members in an effort to explain his father's conditions and medical needs as well as to assist with his transition to an appropriate facility.

### b. Mr. McElhatten's rehabilitation

Shortly after the search warrant was executed in this case, Mr. McElhatten voluntarily sought counseling from Gary Echt (hereinafter "Echt"), a licensed practitioner in the field of sexual addiction. During their initial consultation, Echt administered a psycho-sexual evaluation in an effort to determine Mr. McElhatten's particular issues as well as an appropriate treatment regimen.[2]

Echt utilized a number of different tests during the evaluation in order to render various conclusions about Mr. McElhatten's mental health, likelihood of recidivism, and treatment needs. With respect to his general mental health, Echt determined that Mr. McElhatten did not exhibit "any significant issues of anger expression that would cause concern for himself, friends and family, or others in the community." *See* Exhibit "A." Accordingly, Echt opined that Mr. McElhatten "is not in a position to be considered a significant risk to the community." *Id.*

---

[2] Echt prepared a written report detailing the assessment process as well as his conclusions and opinions derived from the psycho-sexual evaluation. Due to the sensitive and otherwise privileged nature of the information contained in said report, the undersigned has not attached a copy to the instant Memorandum. Rather, counsel intends to file the Report separately and under seal with the Court's permission. For purposes of reference, the report will be referred to as Exhibit "A" throughout this pleading.

Echt also obtained information related to any sexually offensive behaviors or proclivities that could warrant concern and/or necessitate treatment. As set forth in the report, the results of the Sexual Addiction Screening Test (hereinafter "SAST")[3] indicated that Mr. McElhatten likely suffered from sexual addiction. *Id.* Likewise, the Dynamic Risk Recidivism Factors confirmed that Mr. McElhatten "does not exhibit any substance abuse issues that would certainly be indicative of high-risk population," nor did he have any issues related to impulse control, antisocial behaviors, or significant mental health issues." *Id.* According to Echt, these factors, in conjunction with his lack of prior criminal history and strong family support, suggest that Mr. McElhatten does not present a significant risk of reoffending. *Id.*

Echt ultimately recommended that Mr. McElhatten engage in cognitive behavioral and psychotherapeutic treatment, including individual and/or group counseling. *Id.* As Echt explained, "[t]here is sufficient documented evidence that sex offenders engaged at this higher level of treatment have been shown to greatly reduce the likelihood of acting out and reoffending again." *Id.*

Importantly, Mr. McElhatten heeded Echt's advice and immediately enrolled in counseling. In a letter directed to the undersigned, Echt describes Mr. McElhatten's commitment and the significant progress that he has made while in treatment. A copy of said letter is attached hereto as Exhibit "B" and is incorporated herein by express reference. Echt reports that Mr. McElhatten "has been very active in group, attending weekly sessions with very few absences." *See* Exhibit "B." Throughout the treatment process, Mr. McElhatten exhibited a keen ability to undertake a leadership role in group counseling settings as well as a willingness to offer positive support to other participants. *Id.*

---

[3] The SAST is designed to assist with assessing the presence of sexually compulsive behaviors and/or sexual addiction.

Echt also offered his insight into the progress that Mr. McElhatten has made during the course of his treatment as well any concerns regarding future recidivism. In discussing the issues of victim empathy and acceptance of responsibility, Echt notes that "Mr. McElhatten was never in denial as to realizing that he had done something terribly wrong, and was able to accept the fact that there were going to be consequences and to take responsibility for his actions." *Id.* Echt further posits that:

> I have been very impressed with the level of understanding he expressed considering the relatively short period of time he had been in treatment and this only increased in both quality and quantity since then. During his time here he has begun to fully comprehend the damage that he has done by contributing to the exploitation of these children, and at the same time recognizing the damage done to his family and his friends.

*Id.*

Mr. McElhatten has consistently recognized that he suffers from sexual addiction and has demonstrated an awareness of its impact on his prior offensive behaviors. As Echt explains, Mr. McElhatten does not attempt to use his addiction as an excuse for downloading and viewing child pornography, "but realizes that this addiction certainly impacted and encouraged the poor choice of engaging in that behavior." *Id.* Echt also noted that Mr. McElhatten has supplemented his recommended treatment by voluntarily attending a Sexual Addiction therapy group, which meets two times a month. *Id.*

Despite the deviant behavior underlying the instant offenses, Echt confirms that "Mr. McElhatten does not have an abnormally distorted view of children and women and sexuality, and clearly does not have antisocial tendencies, impulse behavior issues or substance abuse issues." *Id.* Furthermore, the issues stemming from Mr. McElhatten's social isolation have significantly improved during the course of his counseling. *Id.* Based upon his level of participation, commitment to treatment, and his understanding of his sexual offending behavior, Echt opines

that Mr. McElhatten presents "a much lower level of risk in terms of recidivism." *Id.* Because of Mr. McElhatten's strong commitment to recovery and the level of responsibility and ownership he is taking regarding his offending behaviors, Echt advocates for a lenient sentence that would allow Mr. McElhatten to continue his rehabilitative efforts, which, in turn, will serve to further reduce the likelihood of any future recidivism. *Id.*

It is evident that, through treatment, Mr. McElhatten has come to appreciate the severity of his offense(s) and the harm that he caused through his downloading and viewing of child pornography. Moreover, he has gained better insight into the reasons that he engaged in this abhorrent behavior and the means to ensure that he does not recidivate in the future. He has found counseling to be extremely beneficial and he intends to continue with his treatment after the disposition of this matter.

### c. Mr. McElhatten's remorse and contrition

Mr. McElhatten unquestionably accepted responsibility for his conduct in this case: he voluntarily submitted to multiple interviews with law enforcement officers and readily admitted his misconduct; and he has candidly discussed the offenses in treatment over the previous two (2) years and has entered guilty pleas in the case at bar. At the present time, he stands before this Honorable Court humbled, remorseful, and contrite. PSR ¶29. He understands that his conduct was wrong and he is embarrassed and ashamed for putting himself and his family in this unfortunate situation. *Id.* He recognizes that although he never sought to harm anyone, especially those depicted in the materials on his computer, his actions have had this unintended effect. *Id.* He expressed his remorse for any pain and suffering that he caused as a result of this offense. *Id.* He desperately wants to atone for his mistakes and will do whatever is necessary to ensure that he does not find himself in a similar predicament in the future.

Even when the Guidelines were mandatory, post-offense rehabilitation and the facilitation of the administration of justice were permissible grounds for a downward departure. *United States v. Rudolph*, 190 F.3d 720, 722-23 (6th Cir 1999); *United States v. Fagan*, 162 F.3d 1280, 1284-85 (10th Cir. 1998); *United States v. Garcia*, 926 F.2d 125 (2d Cir. 1991); *United States v. Volpe*, 224 F.3d 72 (2d Cir. 2000)(noting that activities facilitating the proper administration of justice may form the basis for a downward departure).  After the Guidelines were made advisory, this conduct becomes even more important at sentencing.

Remorse is also a factor that sentencing courts are required to consider.  *Fagan*, 162 F.3d at 1284-85.  Under the prior departure analysis, "[b]ecause remorse is not a prohibited factor, but a factor already considered in the Sentencing Guidelines, a sentencing court may depart downward if it finds that remorse is present to an exceptional degree."  Now that the Guidelines are merely advisory, these factors are relevant in determining a reasonable sentence after *Booker* under 18 U.S.C. § 3553(a).

Mr. McElhatten has candidly discussed his remorse, not only for committing this offense, but also for the resultant harm that it has caused his family as well as the individuals depicted in the images and/or videos. PSR ¶29.  He has no criminal history apart from this case and has tried to be a positive and contributing member of society by exhibiting a strong work-ethic and a commitment to serving others.  He has certainly learned his lesson as a result of this case and a substantial term of incarceration is not necessary to ensure that he does not find himself in a similar predicament in the future.  Based upon his age and his lack of criminal history, it is respectfully submitted that Mr. McElhatten presents a very low risk for recidivism.  He humbly asks that this Court take these factors into consideration in determining a sentence that is not greater than necessary to comport with the principles and purposes of sentencing set forth in 18

U.S.C. § 3553(a).

### d. support of family and friends

District courts sentencing below the calculated Guidelines range have recognized the importance of a defendant's strong social support system. *See United States v. Wachowiak*, 496 F.3d 744, 747-48 (7th Cir. 2007)(explaining that "[w]here the Court has found strong social support from family, friends, and others the Court has deemed a lower sentence appropriate"); *see also United States v. Smith*, 275 Fed.Appx. 184, 186 (4th Cir. 2008)(relying on the defendant's strong family ties when imposing a sentence that varied 24 months below the calculated Guidelines range in a child pornography prosecution).

Despite the difficult circumstances attendant to this case, Mr. McElhatten maintains the love and support of his family and friends. Several of these individuals have reached out to counsel to express their surprise upon learning of the instant offenses as it is completely uncharacteristic of the person that they have known. They have conveyed their unwavering support for Mr. McElhatten as well as their willingness to do whatever is necessary in order to ensure that he does not engage in any future instances of misconduct upon the conclusion of this case.[4]

---

[4] Counsel has been informed that some of these individuals intend to submit letters of support for the Court's consideration in imposing a sentence in this case. Said letters will be provided to the Court and opposing counsel upon receipt.

**2. Need for sentence imposed – to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; to afford adequate deterrence to criminal conduct; and to protect the public from further crimes of the defendant.**

At the time of sentencing, it will be this Honorable Court's duty to impose a sentence sufficient, but not greater than necessary, to comport with the purposes of sentencing as set forth in 18 U.S.C. § 3553(a)(2)(A)-(D). These purposes include promoting respect for the law, which incorporates providing just punishment in light of the seriousness of the offense; affording adequate deterrence; protecting the public from further crimes by Mr. McElhatten; and providing Mr. McElhatten with any needed rehabilitation and treatment.

### a. punishment and deterrence

Applying the above-referenced factors to the case at bar, it is apparent that a downward variance from the advisory Guideline's range would sufficiently achieve the sentencing goals outlined in 18 U.S.C. § 3553(a). At a minimum, he will be required to serve a five (5) year term of incarceration. In addition to the loss of liberty, he will be also punished by a lifetime of collateral consequences associated with being a convicted sex offender and felon, including the loss of various constitutional rights as well as the requirement that he register as a sex offender. *See Lawrence v. Texas,* 539 U.S. 558, 575 (2003)(recognizing that the "stigma" imposed for a sexual offense of conviction is "not trivial").

This case has certainly had a dramatic impact on Mr. McElhatten. He has had ample time to reflect upon his conduct and the consequences for his aberrant behavior. For someone who has never been incarcerated before, the prospect of a substantial term of imprisonment is not lost upon him. Respectfully, both general and specific deterrence will be satisfied by a lesser period of incarceration than that proposed by the advisory Guidelines, to be followed by a significant period

of supervision through the Probation Office. Such a sentence would enable Mr. McElhatten to further his rehabilitative efforts and further reduce the likelihood of future recidivism.

### b. age, recidivism and need for incapacitation

As a thirty-one (31) year-old offender with no prior criminal history, Mr. McElhatten presents a relatively low risk of recidivism. In *United States v. Polito*, 215 Fed.Appx. 354 (5th Cir. 2007), the Fifth Circuit Court of Appeals upheld the district court's imposition of a downward variance for a defendant convicted of Possessing Child Pornography. The district court explained that it imposed a sentence outside of the "prescribed Guideline range" because of the following:

> the defendant *was only eighteen years old and very immature at the time of the offense and his age and mental condition prohibited him from acting rationally*; there was no evidence that the defendant would be a threat to the community or young children in the area or that the defendant ever intended to conduct predatory sexual activities with children; the defendant had never been arrested for or convicted of any other offense; since the offense, the defendant had conducted himself in a very positive way, receiving mental health treatment, maintaining employment, and avoiding any problem with the law, which made him atypical of many convicted of [possessing child pornography]; a term of imprisonment would interrupt the defendant's mental health treatment; and the sentence would serve as a deterrent to others similarly situated.

*Id*. at 356-357. (Emphasis added).

In the case at bar, Mr. McElhatten was approximately twenty-nine (29) years old when the search warrant was executed. As previously explained, his aberrant behavior was influenced, at least in part, by his early exposure to viewing pornography following his mother's unexpected passing as well as his previously-undiagnosed sexual addiction. On his own volition, Mr. McElhatten has undertaken significant efforts to address his cognitive issues and to reduce the likelihood of any future recidivism. To that end, he has been actively engaged in treatment for over two (2) years, including both individual and group counseling. He has made positive strides

toward recovery and relapse prevention. Furthermore, Mr. McElhatten has no prior criminal history and he has avoided any misconduct during the lengthy course of these proceedings – a circumstance the *Polito* Court noted was "atypical of many convicted of possessing child pornography." *Polito*, 215 Fed. Appx. at 357. His lack of criminal history and his significant commitment to rehabilitation demonstrate that he does not pose a threat to the community.

A substantial term of incarceration is not necessary to satisfy the sentencing objectives set forth in 18 U.S.C. § 3553 and would be a particularly harsh punishment for Mr. McElhatten. His age, family circumstances, education and employment history all indicate that he presents a very low risk of any future misconduct. As a sex offender who has been engaged in cognitive behavioral therapy, his already low likelihood of reoffending is even further reduced. *See* Exhibit "B."

In total, these factors support the conclusion that Mr. McElhatten does not present a danger to the community and it is unlikely that he will engage in unlawful conduct in the future. Since his arrest, he has had the opportunity to reflect upon his actions as well as the consequences that he would suffer should he engage in any future criminal misconduct. He has admitted his mistakes and is fully committed to doing whatever is necessary to atone for his behavior. Furthermore, the conduct underlying these offenses was committed under circumstances that are unlikely to recur. Mr. McElhatten has been actively engaged in treatment for over two (2) years has made significant progress toward recovery, as evidenced by Echt's conclusion that presents a low risk for recidivism. Accordingly, counsel submits that a sentence below the advisory range would more than adequately fulfill the principles and purposes of sentencing contained in 18 U.S.C. § 3553.

### 3.  The kinds of sentences available under the Guidelines.

As set forth in *Rita* and *Gall*, *supra*, a district court has discretion to impose a sentence below the Guidelines range so long as it considers the sentencing factors delineated in § 3553(a). *Rita*, 127 S. Ct. at 2465.

### 4.  The applicable advisory Guidelines range.

The PSR calculated Mr. McElhatten's offense level as follows:

| | |
|---|---|
| ***Base Offense Level for Count 1*** | 22 |
| §2G2.2(b)(2) material involving pre-pubescent minor | +2 |
| §2G2.2(b)(3)(F) knowingly distributing child pornography | +2 |
| §2G2.2(b)(4) material portraying sadistic or masochistic conduct | +4 |
| §2G2.2(b)(5) pattern of activity involving the sexual exploitation of a minor | +5 |
| §2G2.2(b)(6) use of a computer | +2 |
| §2G2.2(b)(7)(D) offense involving 600 images or more | +5 |
| Adjusted Offense Level | **<u>42</u>** |
| Adjustment for Acceptance of Responsibility | -3 |
| **Total Offense Level** | **<u>39</u>** |

PSR ¶34-48.  With a total offense level of thirty-nine (39) and a criminal history category of one (1), the recommended Guideline's range set forth in the PSR is 262-327 months of imprisonment.[5] PSR ¶76.

---

[5] Again, Mr. McElhatten contends that the appropriate Guideline's range based upon the PSR's current calculations should be 240 months.  Furthermore, Mr. McElhatten maintains a general objection to the application of and reliance upon the enhancements set forth in U.S.S.G. § 2G2.2. As such, counsel avers that the applicable Guidelines range to be determined by the Court may be lower than is presently reflected in the PSR.  Irrespective of the calculated Guidelines range, the undersigned submits that the arguments pertaining to U.S.S.G. § 2G2.2 are sufficient – in and of themselves – to warrant a downward variance in this case.

For the reasons contained herein and those to be presented at the sentencing hearing, Mr. McElhatten respectfully moves this Honorable Court to impose sentence below the advisory Guidelines range.

### 5. Pertinent Policy Statements

Congress established the Sentencing Commission for the purpose of formulating and constantly refining the national sentencing standards. *Kimbrough*, 128 S.Ct. at 570. In fulfillment of its role, the Sentencing Commission "has the capacity courts lack to base its determinations on empirical data and national experience, guided by a professional staff with appropriate expertise." *Id*. at 574.

The Guidelines function to advance sentencing reform objectives such as reducing sentencing disparity, assuring certainty and severity of punishment, and increasing the rationality and transparence of punishment. *See* United States Sentencing Commission, *Fifteen Years of Guidelines Sentencing*, at 11-12 (Nov. 2004) (*Assessment*). The Sentencing Commission collected, studied and ultimately utilized data on past practices and recidivism rates in formulating the Guidelines. *Id*. at 14 (noting that the Guidelines are based in part on statistical analyses of pre-Guidelines sentencing practices); United States Sentencing Guidelines § 1A.1, introductory comments ¶3. The Sentencing Commission relied upon this data in formulating offense levels for each crime, with said offense levels corresponding to a particular recommended sentencing range. As such, the Guidelines typically represent a reasonable estimation of a fair sentencing range.

Public policy and statutorily created mandatory-minimum sentences have caused the Sentencing Commission to depart from precedent practices in setting offense levels for such crimes as fraud, drug trafficking, and child crimes and sexual offenses. *Kimbrough*, 128 S.Ct. at

567.   It is respectfully submitted that the dramatic increase in sentences for these offenses have been adopted without empirical support and in spite of research demonstrating that longer prison sentences do not increase deterrence.   Empirical research continues to bolster the notion that while certainty may provide a marginal deterrent effect, "increases in severity of punishments do not yield significant (if any) marginal deterrent effects." Michael Tonry, *Purposes and Functions of Sentencing*, 34 Crime & Just. 1, 28 (2006); *see also* Zvi D. Gabbay, *Exploring the Limits of the Restorative Justice Paradigm: Restorative Justice and White Collar Crime*, 8 Cardozo J. Conflict Resol. 421, 447-48 (2007)(confirming that "certainty of punishment is empirically known to be a far better deterrent than severity").

The offense level computation in this case involves the utilization of Section 2G2.2. It should be noted that courts around the nation have concluded that Section 2G2.2 fails to provide meaningful guidance at sentencing.   "Rather than carefully differentiating between offenders based on their culpability and dangerousness, §2G2.2 consists of a hodgepodge of outdated enhancements that apply in nearly every case." *United States v. Abraham*, 2013 WL 2099795, *4 (D. Neb. 2013).   Courts have consistently noted that rather than underscoring the experience and judgment of the Commission, the child pornography Guidelines reflect a series of policy-driven amendments. *See, e.g.*, *United States v. Dorvee*, 616 F.3d 174 (2d Cir. 2010); *United States v. Grober*, 624 F.3d 592 (3d Cir. 2010); *United States v. Huffstatler*, 571 F.3d 620 (7th Cir. 2009*); United States v. Janosko,* 355 F.App. 892, 895 (6th Cir. 2009); *United States v. Apodaca*, 641 F.3d 1077 (9th Cir. 2011).

For example, the Sixth Circuit has previously noted that U.S.S.G. §2G2.2 is "fundamentally different" from most other Guidelines because, whereas "Sentencing Guidelines are typically developed by the Sentencing Commission using an empirical approach based on data

about past sentencing policies...the Commission did not use this empirical approach in formulating the Guidelines for child pornography." *McNerney,* 636 F.3d at 775–76, *quoting Dorvee, supra.* Citing the absence of an empirical approach, the Second Circuit asserted that Section 2G2.2 is riddled with "irrationality" and that "unless applied with great care, [it] can lead to unreasonable sentences that are inconsistent with what 3553 requires." *Dorvee*, 616 F.3d at 187.

In a 2010 United States Sentencing Commission survey of federal judges regarding Guidelines sentencing, the majority of judges agreed that the Guidelines typically prescribe appropriate sentences. Striking, however, is the fact that when asked whether the child pornography Guidelines generate appropriate sentencing ranges, 69% of judges said that the Guideline ranges in child pornography receipt cases were too high. *See* U. S. Sentencing Commission, *Results of Survey of United States District Judges*, January 2010 Through March 2010 (June 2010), *available at* http://www.ussc.gov/Research/Research_Projects/Surveys/20100608_Judge_Survey.pdf, last visited August 19, 2013).

Sentencing statistics confirm the results of the judicial survey. According to the Sentencing Commission, in 2010, out of 1,684 child pornography cases sentenced pursuant to Section 2G2.2, district courts issued below-Guidelines sentences in 51% of the cases, compared to 17.9% in non-child pornography cases. U.S. Sentencing Commission, *Final Quarterly Data Report*, (2010), *available at* http://www.ussc.gov/Data_and_Statistics/Federal_Sentencing_Statistics/Quarterly_Sentencing_Updates/USSC_2010_Quarter_Report_4th.pdf, last visited August 19, 2013. Recognizing the growing call for revisions to Section 2G.2.2, the Sentencing Commission itself published a report

detailing the need for reform of Section 2G2.2 to better distinguish among offenders. *See* U.S. SENT'G COMM'N, *Report: Federal Child Pornography Offenses* (Feb. 2013). Elaborating on this point, the Commission observed the following:

> [f]our of the six sentencing enhancements in § 2G2.2—those relating to computer usage and the type and volume of images possessed by offenders, which together account for 13 levels— now apply to most offenders and, thus, fail to differentiate among offenders in terms of their culpability. These enhancements originally were promulgated in an earlier technological era, when such factors better served to distinguish among offenders. Indeed, most of the enhancements in § 2G2.2, in their current or antecedent versions, were promulgated when the typical offender obtained child pornography in printed form in the mail.

*Id.* at ii-iii. For instance, the Commission found that, for 2010, the enhancements for possessing materials depicting prepubescent minors, use of a computer, and number of images applied in over 96.3% of all Section 2G2.2 cases, while the sado-masochistic enhancement applied in 74.2% of all cases. U.S. Sentencing Commission, *Report to Congress: Federal Child Pornography Offenses* (Dec. 2012), at 209, available at http://www.ussc.gov/Legislative-and-Public-Affairs/Congressional-Testimony-and-Reports/Sex-Offense-Topics/201212-Federal-Child-Pornography-Offenses (last visited August 19, 2013).

In a recent Sixth Circuit Opinion, Judge Merritt referenced the problems plaguing the Guidelines in child pornography cases: "[m]any of the groups of officials and experts who have looked into the problem of Internet child porn have reached the conclusion that the sentencing guidelines that the District Court and our Court have now enforced in this case should be greatly reduced." *United States v. Walters*, Case No. 14-3097, p. 15 (6th Cir. 2015). The Court referenced the Sentencing Commission's 2012 Report, wherein the Commission itself criticized the fairness and viability of the Guidelines in child pornography cases. *Id.* The Commission's study expressly concluded that the present child pornography Guidelines have "no rational basis,"

are "outmoded," do not "distinguish adequately among offenders based on their degrees of culpability," and have "enhancements," like the ones in this case, that are "outmoded and disproportionate."

The disagreement with the Guidelines for non-production offenders is widespread. The Report concludes, in pertinent part:

> [n]umerous stakeholders—including the Department of Justice, the Federal Defender community, and the Criminal Law Committee of the Judicial Conference of the United States—have urged the Commission and Congress to revise the nonproduction sentencing scheme to better reflect the growing body of knowledge about offense and offender characteristics and to better account for offenders' varying degrees of culpability and dangerousness.

*See Federal Child Pornography Offenses* at p. xxi. As the Sixth Circuit noted in *Walters*, *supra*, "[u]fortunately, the Department of Justice has not adequately communicated its position to its United States Attorneys, and so we keep getting cases like this one." *Walters*, Case No. 14-3097 at p. 16. Both the Dissent and Concurring Opinions in *Walters* suggested that the solution to avoiding such injustices in child pornography cases is for district courts to recognize that applicable Guidelines should be carefully scrutinized. The Dissent also suggested that the harsh sentences imposed in these cases may violate the Eighth Amendment's prohibition of cruel and unusual punishment:

> [i]f ever a sentence should be labeled "excessive" and "out of proportion" to the "offender and the offense," and outside "evolving standards of decency," it is the 12-plus years of imprisonment imposed in this case on a young man and his family because he downloaded a group of deviant and disgusting child porn photographs. I am sorry that our panel has not acted to at least reduce the sentence to the five-year mandatory minimum and to express its disagreement with this unjust sentence.

*Id*. at p. 17.

The foregoing information highlights the agreement among a growing number of courts as well as the Sentencing Commission that the framework of U.S.S.G. §2G2.2 requires extensive

revision to reflect technological developments in society and scientific research, while also accounting for the spectrum of culpability associated with child pornography offenses. Given the inadequacies of U.S.S.G. §2G2.2, the advisory Guideline's range produced by this Section warrants little – if any – deference. As such, the undersigned respectfully submits that a substantial downward variance from the recommended Guideline's range is both warranted and appropriate in this matter.

IV.     **DESIGNATION REQUEST**

Pursuant to 18 U.S.C. § 3621, when deciding on the place of imprisonment for a convicted individual, the Bureau of Prisons may consider "any statement by the court that imposed the sentence." Because this Honorable Court stands in the best position to consider the history and circumstances of this case, Mr. McElhatten respectfully moves this Court to recommend to the Bureau of Prisons that he be designated to FCI Elkton. He seeks placement at FCI Elkton as it is a low security facility located in reasonable proximity to his family.

## V.    <u>CONCLUSION</u>

For the foregoing reasons, Mr. McElhatten respectfully requests that this Honorable Court sustain the defense's objections and reduce the calculated Guidelines range based, in part, upon the inapplicability of several enhancements contained within U.S.S.G. §2G2.2.  Furthermore, Mr. McElhatten requests that the Court impose a substantial downward variance from the calculated Guidelines' range, as said range is greater than necessary to comport with the purposes of sentencing as set forth in 18 U.S.C. § 3553(a).

Respectfully submitted,

SEAN MCELHATTEN
By Counsel

/s/Eric C. Nemecek
ERIC C. NEMECEK (0083195)
Counsel for Defendant
Friedman & Nemecek, L.L.C.
1360 East 9th Street, Suite 650
Cleveland, OH 44114
P: (216) 928-7700
F: (216) 820-4659
E: ecn@fanlegal.com

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing Position of the Defendant as to Sentencing Factors was filed on the 23rd day of July, 2019 by CM/ECF, which will send a notification of such filing (NEF) to the following:

Michael Sullivan
Assistant United States Attorney
Office of the United States Attorney


/s/Eric C. Nemecek
Eric C. Nemecek
Counsel for Defendant

## LIST OF EXHIBITS

**Exhibit A**:                    Psycho-sexual Evaluation of Gary Echt (filed separately and under seal)

**Exhibit B**:                    Treatment Letter from Gary Echt dated July 22, 2019