IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF OHIO

EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CASE NO.: 1:18CR661 |
| | ) | |
| Plaintiff, | ) | JUDGE BENITA Y. PEARSON |
| | ) | |
| v. | ) | |
| | ) | |
| SEAN P MCELHATTEN, | ) | UNITED STATES' SENTENCING |
| | ) | MEMORANDUM |
| Defendant. | ) | |

The United States of America, by its counsel Justin E. Herdman, United States Attorney, and Michael A. Sullivan, Assistant United States Attorney, respectfully requests that this Court sentence Sean P. McElhatten to a term of imprisonment within the guidelines range.

**I.     INTRODUCTION**

McElhatten pled guilty to receiving and distributing depictions of minors engaged in sexually explicit conduct, in violation of 18 U.S.C. § 2252(a)(2), and possessing child pornography, including at least one image of a prepubescent minor or a minor who had not attained 12 years of age, in violation of 18 U.S.C. § 2252A(a)(5)(B). (R. 13: PSR, PageID 62). There is no plea agreement in this case. (Id.).

McElhatten used the BitTorrent peer-to-peer ("P2P") network to search for and download child pornography. (Id.). On March 21, 2017, an investigator monitoring the network connected to McElhatten's computer and downloaded 120 complete files of suspected child pornography. (Id.). A sample of the files downloaded from McElhatten's computer included videos ranging in length from 1 minute to over 9 minutes and depicted a range of content, including prepubescent

girls engaged in sexually explicit conduct, including masturbation and oral-genital sexual intercourse. (Id., PageID 62-63).

Law enforcement executed a warrant at McElhatten's home and found several computers and computer equipment in McElhatten's bedroom. (Id., PageID 63). McElhatten admitted to searching for and downloading images and videos of child pornography. He admitted to searching for images and videos of children as young as 4 years-old. McElhatten admitted to having viewed a video of a child in bondage as well as a video of a child performing oral sex on a dog. (Id., PageID 64). McElhatten further admitted that in 2015, while on a family vacation in the Outer Banks, North Carolina, he surreptitiously videotaped two nine-year-old girls, who were daughters of a friend of the family. He videotaped the girls when they undressed in the bedroom and bathroom. McElhatten indicated that the videos were still on his cell phone. Law enforcement confirmed that the videos were indeed still on McElhatten's cell phone. (Id.). McElhatten further admitted that he had stolen the underwear of one of the girls he had videotaped. He indicated that he subsequently masturbated while holding the underwear and then ejaculated into them; and that he still had them in his room. He provided the underwear to law enforcement. (Id.).

Forensic analyses of McElhatten's computer revealed 9,021 files of child pornography. (Id., PageID 65). McElhatten possessed a disturbing range of content, including a prepubescent children being subjected to sadistic conduct and bestiality. (Id.)

## II.     ARGUMENT

McElhatten's offense conduct, history, and characteristics warrant a within-guidelines sentence. Contrary to his assertion, § 2G2.2 is valid. Furthermore, none of the mitigating factors

2

he presents – age, role as a caregiver, lack of criminal history, post-offense actions – warrants a downward variance.

### A. Guidelines Calculation

McElhatten's base offense level is 22. (Id., PageID 66). McElhatten searched for and downloaded child pornography depicting pre-pubescent minors or minors who had not attained the age of 12 years, triggering, a two-level increase pursuant to § 2G2.2(b)(2). (Id.). Two more levels are added for distribution, pursuant to § 2G2.2(b)(3)(F). Four more levels are added, pursuant to § 2G2.2(b)(4) for possessing material that depicted sadistic or masochistic conduct. Five more levels are added, pursuant to § 2G2.2(b)(5) because McElhatten engaged in a pattern of activity involving the sexual abuse or exploitation of a child (surreptitious videotaping of two 9-year-old girls in North Carolina). Two levels are added, pursuant to § 2G2.2(b)(6), because McElhatten used a computer to receive, distribute and possess the child pornography. Five additional levels are added, pursuant to § 2G2.2(b)(7)(D), because the offense involved more than 600 images. (Id.).

McElhatten's argument that the two-level increase for "using a computer" constitutes impermissible double counting is foreclosed by United States v. Walters, 775 F.3d 778 (6th Cir. 2015). Curiously, McElhatten attempts to distinguish his conduct from United States v. Lewis, 605 F.3d 395 (6th Cir. 2010), but fails to mention Walters.[1] The Walters Court unequivocally stated, "The enhancement [for use of a computer] remains relevant – regardless of its frequency of application – because the harm it addresses is real." Id. at 787. The Court further recognized that the Commission considered the frequent application of certain enhancements in setting the

---

[1] McElhatten does cite Walters later in his sentencing memorandum, at PageID 118, where he quotes Judge Merritt, without indicating that Judge Merritt authored the dissent.

3

base offense levels for § 2G2.2. Id. at 786; see also U.S.S.G. App. C, Amendment 664, pp. 58-59.

McElhatten's adjusted offense level totals 42. The government anticipates that the adjusted offense level will be reduced three levels, to 39, based on McElhatten's acceptance of responsibility. Thus, based on a total offense level of 39 and a criminal history category of I, McElhatten's advisory guidelines range is 262 to 327 months of imprisonment.

**B.    Response to McElhatten's General Objections to Section 2G2.2**

In 2012, the Sentencing Commission published a report advising Congress on sentencing policy related to § 2G2.2 (the "2012 Report").[2] While the Commission critiqued aspects of § 2G2.2, it did not diminish the seriousness of child pornography offenses. The Commission recognized that even "the simple possession of child pornography [is] extremely serious because [it results] in perpetual harm to victims and validate[s] and normalize[s] the sexual exploitation of children." (2012 Report, p. vi). It also recognized that the Internet allows child pornography to be distributed around the world and creates a permanent record of victims' abuse, which causes them lifelong suffering. (Id., p. vii).

The Commission's critique is that § 2G2.2 does not adequately distinguish amongst offenders, which results in disproportionate penalties. (Id., pp. 321-22). McElhatten claims that this supports a downward variance, but his argument is unavailing. The current structure of § 2G2.2 is the result of Congress exercising its legislative power.[3] Congress' involvement in § 2G2.2 does not delegitimize the guideline. See United States v. Bistline, 665 F.3d 758, 762

---

[2] Available online at: https://www.ussc.gov/research/congressional-reports/2012-report-congress-federal-child-pornography-offenses
[3] See, e.g., the PROTECT Act, Pub. L. No. 108-21, 117 Stat. 650 (2003) and the Child Protection Act of 2012, Pub. L. No. 112-206, 126 Stat. 1490 (Dec. 7, 2012).

4

(6th Cir. 2012).  Indeed, "Congress can marginalize the Commission all it wants: Congress created it."  Id.  Thus, a court may disagree with the guidelines on policy grounds; however, "with respect to those enhancements [dictated by Congress], it is Congress' reasons that a district court must refute before declining to apply § 2G2.2 out of hand."  Id. at 764.

McElhatten's presentation of case law on the subject of § 2G2.2 is somewhat misleading.  For instance, he states that in United States v. Marshall, 870 F. Supp.2d 489 (N.D. Ohio June 29, 2012), a district court judge imposed a statutory mandatory minimum 60-month sentence (a 91-month downward variance) because he disagreed with the guidelines.  (R. 16: Defense Sentencing Memo, PageID 101).  Importantly, the defendant in that case had an estimated mental age of 15.5 years and suffered from a myriad of physical, mental, and emotional issues.  Marshall, 870 F. Supp.2d at 498.

Furthermore, counsel implies that the Sixth Circuit in United States v. McNerney, 636 F.3d 772 (6th Cir. 2011) criticized § 2G2.2 for being "fundamentally different" (R. 16: Defense Sentencing Memo, PageID 101); however, the Court was simply reciting the history of § 2G2.2.  Before upholding the district court's application of the five-level enhancement for number of images, the Court stated, "[T]he debate regarding the wisdom of congressionally-mandated enhancements notwithstanding, it is unquestionably Congress' constitutional prerogative to issue sentencing directives."  McNerney, 636 F.3d at 778.  Lastly, counsel cited Judge Merritt's criticism of § 2G2.2 (Id., PageID 118),, but he did not make it clear that Judge Merritt wrote the dissenting opinion in United States v. Walters, 775 F.3d 778 (6th Cir. 2015), a case that upheld application of § 2G2.2 enhancements.

With respect to § 2G2.2, the Sixth Circuit recognizes both Congress' role in legislating and the district court's role in determining a fair sentence based on the facts of each case.  This

5

does not end the debate over § 2G2.2; however, the Commission's 2012 Report identified three categories of offender behavior that may better distinguish amongst offenders. (2012 Report, p. 320). The Commission explained, "The presence of aggravating factors from any of these three categories . . . warrants enhanced punishment depending on the degree that aggravating factors from that category are present in a particular case." (Id., p. 321). One of the categories identified by the Commission was an offender's "collecting behavior," which it described as:

> the content of an offender's child pornography collection and the nature of an offender's collecting behavior (in terms of volume, the types of sexual conduct depicted in the images, the ages of the victims depicted, and the extent to which an offender has organized, maintained and protected his collection over time, including through the use of sophisticated technology);

(Id., p. 320).

McElhatten's collection included files depicting prepubescent children being subjected to sadistic conduct – being penetrated by foreign objects and adult penises, being bound, and being subjected to bestiality. (R. 13: PSR, PageID 65). These facts about McElhatten's collecting behavior are troubling because experts believe, and common sense dictates, that an offender's collection is an indicator of his sexual interests. (2012 Report, p. 77 n. 24; see also Kenneth V. Lanning, *Child Molesters: A Behavioral Analysis*, NAT'L CTR. FOR MISSING & EXPLOITED CHILDREN, 107 (2010)[4] ("An offender's pornography and erotica collection is the single best indicator of what he wants to do.")).

Another category of offender behavior identified by the Sentencing Commission Report is "whether an offender has a history of engaging in sexually abusive, exploitative, or predatory

---

[4] Available online at:
http://www.missingkids.com/content/dam/ncmec/en_us/desktop/publications/nc70.pdf

6

conduct in a addition to his child pornography offenses." (2012 Report, p. 320). Here, McElhatten sexually exploited two 9-year-old girls on multiple occasions while vacationing with his family. Two years after surreptitiously videotaping the girls, he still had their photos on his cell phone – close-at-hand. Two years after stealing and soiling the child's underwear, he still had that "trophy" in his bedroom.

Contrary to counsel's assertions, § 2G2.2 is a valid guideline. Moreover, none of the findings from the Commission's 2012 Report warrants a downward variance in McElhatten's case.

### C. Sentencing Factor: Nature and Circumstances of the Offense and the History and Characteristics of the Defendant

As explained in the preceding sections, the nature and circumstances of McElhatten's offense are troubling.

McElhatten's history and characteristics are unremarkable and do not warrant a downward variance. McElhatten grew up in a supportive family, free from abuse or drug use. He graduated from Lake Catholic High School and received an Associate's Degree from Lakeland Community College, as well as several computer certifications. McElhatten has been afforded much opportunity, but has chosen to direct his computer training and expertise at collecting images and videos of children being abused. A sentence within the guidelines range is appropriate in this case because of the nature and circumstances of McElhatten's child pornography offense and his history of criminal behavior.

### D. Sentencing Factor: Seriousness of the Offense, Respect for the Law, and Just Punishment

McElhatten engaged in crimes that inherently involve the sexual abuse of helpless children and the documentation of that horror. In the seminal case of New York v. Ferber, 458

7

U.S. 747 (1982), the United States Supreme Court recognized the serious and continued harm posed by child pornography.  It stated that "the prevention of sexual exploitation and abuse of children constitutes a government objective of surpassing importance," and referenced several studies that indicate that pornography poses an even greater threat to the child victim than does sexual abuse or prostitution.  Id. at 757, 760.  Because the sexual abuse is reduced to a recording, the image or video may haunt the child long after the original violation occurred.  Id. at 760.  While Ferber was decided in 1982, those statements and studies ring true over thirty years later as the seriousness of these offenses has not changed.

### E. Sentencing Factors:  Deterrence and Protecting the Public

Considerable weight should be given to affording deterrence and protecting the public from further crimes by McElhatten.

McElhatten's instant offense is also relevant in analyzing his risk of recidivism.  "Sexual interest in children and corresponding sexual gratification are significant motivators for most child pornography offenders."  (2012 Report, p. 77).  Moreover, child pornography offenders with a clinical sexual disorder, require intense, long-term treatment including polygraph testing, which is used as a "truth facilitator."  (Id., p. xiv; see also id., p. 298, n. 24 (sex offenders' risk of recidivism persists for decades)).

Accordingly, a sentence within the guidelines range would afford deterrence and protect the public from further crimes by this defendant.

### F. Sentencing Factor:  Training and Treatment for the Defendant

Based on McElhatten's offense conduct, the United States recommends that this Court order his participation in sex offender treatment programs as part of his sentence.

**G.** **Psychological Report**

Although this Court permitted McElhatten to file his psychological report under seal (Marginal Order, July 24, 2019), the government has yet to receive a copy of such report and reserves its right to address the findings therein at the sentencing hearing on July 30, 2019.

**III.** **CONCLUSION**

For the foregoing reasons, the United States respectfully requests that the Court sentence McElhatten within the guidelines range.

    Respectfully submitted,

    JUSTIN E. HERDMAN
    United States Attorney

By:   /s/ Michael A. Sullivan
    Michael A. Sullivan (NY: 2249993)
    Assistant United States Attorney
    United States Court House
    801 West Superior Avenue, Suite 400
    Cleveland, OH 44113
    (216) 622-3977 / (216) 522-8355 (fax)
    Michael.A.Sullivan@usdoj.gov

## CERTIFICATE OF SERVICE

I hereby certify that on this 26th day of July 2019 a copy of the foregoing document was filed electronically.  Notice of this filing will be sent to all parties by operation of the Court's electronic filing system.  All other parties will be served by regular U.S. Mail.  Parties may access this filing through the Court's system.

/s/ Michael A. Sullivan
Michael A. Sullivan
Assistant U.S. Attorney